UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOSE GERMAN,<br><br>               Plaintiff,<br><br>  v.<br><br>CHRIS ROBERTS, et al.,<br><br>               Defendants. | CASE NO. C15-5237 BHS-DWC<br><br>ORDER ADOPTING IN PART AND REMANDING IN PART REPORT AND RECOMMENDATION |

This matter comes before the Court on the Report and Recommendation ("R&R") of the Honorable David W. Christel, United States Magistrate Judge (Dkt. 65), and Plaintiff's objections to the R&R (Dkt. 67).

This case involves the shooting of Plaintiff by Defendant Chris Roberts, an officer with the City of Fircrest Police Department. Plaintiff claims that Defendants used excessive force by failing to warn Plaintiff prior to using deadly force while Plaintiff was unarmed and fleeing. *See* Dkt. 38. The procedural and factual background of this case is set forth more fully in the R&R. Dkt. 65 at 2. On June 2, 2017, Judge Christel issued the R&R. Dkt. 65. On June 16, 2017, Defendants objected. Dkt. 67. On June 29, 2017, Plaintiff responded to the objections. Dkt. 68.

The district judge must determine de novo any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3).

Defendants raise four objections to the R&R. First, they argue that Judge Christel improperly rejected their argument that Plaintiff is collaterally estopped from claiming that Officer Roberts failed to warn him prior to using deadly force. Dkt. 67 at 6–8. Second, they argue that Officer Roberts's use of deadly force was reasonable as a matter of law. *Id.* at 8–9. Third, they argue that Officer Roberts is entitled to qualified immunity on the basis that the right he allegedly violated is not clearly established. *Id.* at 11. Fourth, they argue that Plaintiff's claims against the City of Fircrest must be dismissed because Plaintiff has failed to present evidence that the City's subsequent investigation constitutes the type of "ratification" necessary to impose liability on a municipality under 42 U.S.C. § 1983. *Id.* at 12–13.

Regarding the Defendants' argument on collateral estoppel, the Court adopts the reasoning set forth in the R&R. Defendants claim that Plaintiff is collaterally estopped from arguing that Officer Roberts failed to issue a warning before shooting on the basis that this fact was already litigated in Plaintiff's criminal proceedings. Dkt. 67 at 7. Specifically, Defendants cite to the Court of Appeal's decision that the trial court did not abuse its discretion in preventing Plaintiff from analogizing his case to a different case out of California. However, Defendants fail to articulate any rationale regarding how a factual finding on the issuance of a warning pertains to the Washington courts' decisions

to prevent Plaintiff from analogizing his arrest to unrelated cases during criminal proceedings. Reviewing the record, it appears that the Washington courts' decisions were based on a general policy that such a practice should be avoided to prevent the jury from reaching decisions based on the facts of other cases. The Washington courts' decisions do not appear to depend on any particular findings that the facts in Plaintiff's case are too distinguishable from the California case. The Court agrees with Judge Christel's conclusion that "the issues of whether Defendant Roberts instructed Plaintiff to show his hands and Plaintiff failed to comply were not issues actually or necessarily decided by the state trial or appellate courts." Dkt. 65 at 14. Accordingly, the Court concludes that Plaintiff is not collaterally estopped from arguing that Officer Roberts failed to warn him prior to shooting. In this case, whether or not a warning was issued and the timing of the shooting are factual questions involving credibility determinations that must be reserved for the jury.

Defendants next argue that Officer Roberts's use of force was reasonable as a matter of law. The Court disagrees. The undisputed facts show that Plaintiff, a suspect for an earlier armed assault, was unarmed and fleeing from Officer Roberts when he was shot. Although Plaintiff was suspected of brandishing a firearm in a previous assault, a reasonable belief that Plaintiff was armed would be insufficient to justify the use of deadly force in apprehending him absent some further evidence of an imminent threat to someone else's safety. *See Harris v. Roderick*, 126 F.3d 1189, 1203 (9th Cir. 1997) (finding that shooting an armed, fleeing suspect was not objectively reasonable absent any threatening movement, "even though the suspect had engaged in a shoot-out with law

enforcement officers on the previous day and may have been the person responsible for the death of one of the officers.").

Whether Officer Roberts saw any threatening movements or other evidence to support a probable cause finding that Plaintiff, a fleeing suspect, posed an imminent danger is a genuine factual dispute. As noted by Judge Christel, "[t]he evidence viewed in the light most favorable to Plaintiff shows Plaintiff was escaping out the back door when he was shot and therefore did not present an immediate threat to the officer or others." Dkt. 65 at 18. This finding is supported by evidence suggesting that, at the time of the shooting, Plaintiff had his hands on the door handle of a sliding glass door at mid-chest height and was not otherwise engaged in any particularly threatening movements. Officer Roberts's own testimony suggests that, had Plaintiff escaped out the back door, he would not have posed an imminent threat to anyone. Dkt. 56-5 at 4. Yet, in order to approach Plaintiff after the shooting, Officer Roberts had to walk through the already open glass door to where Plaintiff was lying shot on the back patio—suggesting that the door may have already been open at the time Plaintiff was shot. Dkt. 56-14 at 43.

The Court also adopts the conclusion in the R&R that Officer Roberts is not entitled to qualified immunity. It is well-established that the use of deadly force is only reasonable when used to prevent the escape of a fleeing felony suspect if "[1] it is necessary to prevent the escape and [2] the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Tennessee v. Garner*, 471 U.S. 1, 3 (1985). There does not appear to be a dispute over whether the force was necessary to prevent an escape. However, as explained above,

there are too many genuine factual disputes surrounding the circumstances of the shooting to determine whether an officer in Officer Roberts's position would have probable cause to believe that Plaintiff posed an imminent threat to anyone's safety. Dkt. 56-5 at 4.

The Court is more convinced by Defendants' arguments regarding Plaintiff's claim against the City under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Under *Monell*, a local government can be held liable on a § 1983 claim only "when implementation of its official policies or established customs inflicts the constitutional injury." *Monell*, 436 U.S. at 708. Such a policy can be proven by a local government's ratification of a constitutional violation. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010). Plaintiff's *Monell* claim is premised on a theory of ratification.

In this case, Plaintiff argues that the City of Fircrest ratified the allegedly unconstitutional shooting by Officer Roberts when it conducted an investigation of the shooting and ultimately "found that the use of force [Officer Roberts] used was justified . . . ." Dkt. 56-13. To refute this claim, Defendants argue that the City ratified the shooting based on the version of facts presented by Officer Roberts and that in doing so, it did not ratify the unconstitutional factual basis for the shooting as alleged by Plaintiff.

As Defendants point out, ratification under *Monell* requires that a local government "ratif[y] a subordinate's unconstitutional decision or action *and the basis for it*.'" *Clouthier*, 591 F.3d at 1250 (emphasis added). The mere fact that an officer was not reprimanded or provided with additional training cannot support a theory of ratification.

*Morales v. Fry*, C12-2235-JCC, 2014 WL 1230344, at *14 (W.D. Wash. Mar. 25, 2014); *Clouthier*, 591 F.3d at 1253–54 (holding that a failure to discipline employees, without more, was insufficient to establish ratification). "Ratification . . . generally requires more than acquiescence." *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part on other grounds sub nom. City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765 (2015).

Under this standard, lower courts appear to be divided on whether an internal police investigation that concludes that a shooting by its officers was lawful and within the municipality's policies is alone sufficient to support a theory of ratification for the purposes of *Monell* liability. For instance, another judge in our district has recently found that such circumstances create a question of fact regarding ratification that should be resolved by a jury. *Thomas v. Cannon*, 3:15-05346 BJR, 2017 WL 2289081, at *12–*13 (W.D. Wash. May 25, 2017) ("A rational jury could find that [the Officer]'s decision to shoot was not constitutionally justified, and that [the City] ratified that unconstitutional decision by determining it was lawful and within policy."). On the other hand, other courts have concluded that such an investigation and conclusion will not constitute ratification on their own absent evidence of "something more," such as a "sham investigation" or "conduct so outrageous that a reasonable administrator should have known that he or she should do something about it." *See Kanae v. Hodson*, 294 F. Supp. 2d 1179, 1191–92 (D. Haw. 2003).

As noted in *Kanae*, the Ninth Circuit's leading decision on ratification based on internal police investigations appears to require "something more" than merely a finding

that the shooting was justified. *See id.* (citing *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991)). In *Larez*, the Ninth Circuit found that the result of an internal police investigation approving of an officer's use of force could constitute ratification for the purposes of *Monell* liability if the investigation was premised on "flawed procedures" under which, "at least in the absence of independent, third-party witnesses, [officers] could get away with anything." 946 F.2d at 647.

Based on the analysis outlined in *Larez*, the Court agrees with Defendants that, when establishing *Monell* liability under a ratification theory, a plaintiff must present more than just a police investigation that concludes an officer applied reasonable force. A plaintiff must also point to some set of facts to suggest that the investigation's findings reflect a policy or custom that encourages or condones the underlying constitutional deprivation. As subsequently noted by the Ninth Circuit in *Watkins v. City of Oakland, Cal.*, 145 F.3d 1087 (9th Cir. 1998), the *Larez* decision was based on a set of facts where a jury could find that "that the police chief *was responsible for the constitutional deprivations* because he condoned, ratified, and encouraged the excessive use of force." 145 F.3d at 1093 (emphasis added). Implicit in this explanation is the concept that the police chief's conduct actually contributed to the plaintiff's constitutional deprivation. Accordingly, it appears that the ratification theory for *Monell* liability is not premised on the ratification itself creating liability after the fact of injury; but rather, it seems that evidence of ratification is merely a method of proving a preexisting government "policy, custom, or practice" that proximately causes a plaintiff's constitutional deprivation. Such a formulation of the ratification theory is in keeping with the fundamental principle that

*Monell* liability attaches "when implementation of . . . official policies or established customs *inflicts* the constitutional injury." *Monell*, 436 U.S. at 708 (emphasis added). To conclude otherwise would undermine the Supreme Court's direction "that a municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation.'" *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Monell*, 436 U.S. at 694).

This is not to say that a local government can escape § 1983 liability simply by adopting the version of facts presented by its own officers every time it investigates a police shooting, regardless of the objective evidence. In fact, such a practice would likely have the opposite of its desired effect by showing that the local government's policies and customs in investigating shootings encouraged the constitutional deprivation by signaling to officers that they could "get away with anything." Nonetheless, the Court agrees with the statement in *Kanae* that *Monell* liability requires "something more" than "an investigative group accept[ing] an officer's version over a victim's differing version" of the circumstances surrounding a shooting. *Kanae*, 294 F. Supp. 2d at 1191.

In determining whether Defendants were entitled to summary judgment on Plaintiff's *Monell* claim, the R&R relies exclusively on the facts that (1) Plaintiff has stated a plausible claim against Officer Roberts, and (2) the City of Fircrest conducted an internal investigation where it concluded that Officer Roberts's use of force was justified. The R&R does not assess the details of the investigation or discuss any particular aspect of it. Based on the Court's analysis of the applicable law, it appears that presenting a viable *Monell* claim requires more than the facts relied on in the R&R. Accordingly, the

Court will remand this issue for further proceedings to determine whether there is evidence to suggest that the investigation's procedures and findings constitute the type of ratification that is indeed indicative of a custom or policy that could have been the moving force behind Plaintiff's alleged constitutional violation. On remand, Judge Christel may request or limit additional briefing, oral argument, or discovery as he deems necessary.

The Court having considered the R&R, Plaintiff's objections, and the remaining record, does hereby find and order as follows:

(1) The R&R is **ADOPTED in part** as described above; and

(2) The case is **REMANDED in part** to the Hon. David W. Christel, United States Magistrate Judge, for further proceedings consistent with this order.

Dated this 9th day of August, 2017.

BENJAMIN H. SETTLE
United States District Judge