UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOSE GERMAN,

                                    Plaintiff,

            v.

CHRIS ROBERTS, et al.,

                                    Defendants.

CASE NO. C15-5237 BHS-DWC

ORDER DECLINING REPORT
AND RECOMMENDATION AND
GRANTING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

This matter comes before the Court on the Report and Recommendation ("R&R")

of the Honorable David W. Christel, United States Magistrate Judge (Dkt. 79), and

Plaintiff's objections to the R&R (Dkt. 80). For the reasons stated below the Court

declines to adopt the R&R and grants Defendants' motion for summary judgment as it

pertains to Plaintiff's municipal liability claim.

## I.    BACKGROUND

This case involves the shooting of Plaintiff by Defendant Chris Roberts, an officer

with the City of Fircrest Police Department. Plaintiff claims that Defendants used

excessive force by failing to warn Plaintiff prior to using deadly force while Plaintiff was

1  unarmed and fleeing.[1] *See* Dkt. 38. The procedural and factual background of this case is

2  set forth more fully in the R&R. Dkt. 79 at 1–3. On November 14, 2017, Judge Christel

3  issued the R&R, denying Plaintiff's motion for summary judgment. Dkt. 79. On

4  November 28, 2017, Defendants objected. Dkt. 80. On December 13, 2017, Plaintiff

5  responded to the objection. Dkt. 83.

6                                    **II.    DISCUSSION**

7          Defendants object to the R&R and argue that the City is entitled to summary

8  judgment on Plaintiff's claim under *Monell v. Dep't of Soc. Servs. of City of New York*,

9  436 U.S. 658 (1978). The district judge must determine de novo any part of the

10  magistrate judge's disposition to which a party has properly objected. The district judge

11  may accept, reject, or modify the recommended disposition; receive further evidence; or

12  return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3).

13          Under *Monell*, a local government can be held liable on a § 1983 claim only

14  "when implementation of its official policies or established customs inflicts the

15  constitutional injury." *Monell*, 436 U.S. at 708. Such a policy can be proven by a local

16  government's ratification of a constitutional violation. *Clouthier v. Cnty. of Contra*

17  *Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010). Plaintiff's *Monell* claim is premised on such

18  a theory of ratification. Specifically, Plaintiff argues that the City of Fircrest ratified the

19  _____

20          [1] While Plaintiff's original pro se complaint referred to his ongoing medical treatment
     while incarcerated and may have been construed to raise concerns regarding the conditions of his
     confinement, his second amended complaint makes clear that this lawsuit is focused exclusively
21  on the use of force employed in his arrest. *See* Dkts. 6, 38. Accordingly, the Court notes that this
     case should no longer proceed before a United States magistrate judge. *See* 28 U.S.C. §
22  636(b)(1).

allegedly unconstitutional shooting by Officer Roberts when it conducted an investigation

of the shooting and ultimately "found that the use of force [Officer Roberts] used was

justified . . . ." Dkt. 56-13. To refute this claim, Defendants argue that the City ratified the

shooting based on the version of facts presented by Officer Roberts and that in doing so,

it did not ratify Officer Roberts's conduct under the unconstitutional factual account of

the shooting as alleged by Plaintiff.

As Defendants point out, ratification under *Monell* requires that a local

government "ratif[y] a subordinate's unconstitutional decision or action *and the basis for*

*it*.'" *Clouthier*, 591 F.3d at 1250 (emphasis added). The mere fact that an officer was not

reprimanded or provided with additional training cannot support a theory of ratification.

*Morales v. Fry*, C12-2235-JCC, 2014 WL 1230344, at *14 (W.D. Wash. Mar. 25, 2014);

*Clouthier*, 591 F.3d at 1253–54 (holding that a failure to discipline employees, without

more, was insufficient to establish ratification). "Ratification . . . generally requires more

than acquiescence." *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1231 (9th

Cir. 2014), *rev'd in part on other grounds sub nom. City & Cty. of San Francisco, Calif.*

*v. Sheehan*, 135 S. Ct. 1765 (2015).

Under this standard, lower courts appear to be divided on whether a Plaintiff

adequately supports a theory of *Monell* ratification on summary judgment whenever an

internal police investigation concludes that a shooting by its officers was lawful and

within the municipality's policies. For instance, another judge in our district has recently

found that such circumstances necessarily create a question of fact regarding ratification

that should be resolved by a jury. *Thomas v. Cannon*, 3:15-05346 BJR, 2017 WL

2289081, at *12–*13 (W.D. Wash. May 25, 2017) ("A rational jury could find that [the Officer]'s decision to shoot was not constitutionally justified, and that [the City] ratified that unconstitutional decision by determining it was lawful and within policy."). On the other hand, other courts have concluded that such an investigation and conclusion will not constitute ratification for the purposes of *Monell* absent evidence of "something more," such as a "sham investigation" or "conduct [by the officer] so outrageous that a reasonable administrator should have known that he or she should do something about it." *See Kanae v. Hodson*, 294 F. Supp. 2d 1179, 1191–92 (D. Haw. 2003).

As noted in *Kanae*, the Ninth Circuit's leading decision on ratification in the context of internal police investigations appears to require "something more" than merely a finding that the shooting was justified. *See id.* (citing *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991)). In *Larez*, the Ninth Circuit found that the result of an internal police investigation approving of an officer's use of force could constitute ratification for the purposes of *Monell* liability if the investigation was premised on "flawed procedures" under which, "at least in the absence of independent, third-party witnesses, [officers] could get away with anything." 946 F.2d at 647.

Based on the analysis outlined in *Larez*, the Court agrees with Defendants that, when establishing *Monell* liability under a ratification theory, a plaintiff must present more than just a police investigation that concludes an officer applied reasonable force. A plaintiff must also point to some set of facts to suggest that the investigation's findings reflect a policy or custom that encourages or condones the alleged underlying constitutional deprivation. As subsequently noted by the Ninth Circuit in *Watkins v. City*

*of Oakland, Cal.*, 145 F.3d 1087 (9th Cir. 1998), the *Larez* decision was based on a set of

facts where a jury could find that "that the police chief *was responsible for the*

*constitutional deprivations* because he condoned, ratified, and encouraged the excessive

use of force." *Id.* at 1093 (emphasis added). Implicit in this explanation is the

understanding that the police chief's conduct actually contributed to the plaintiff's

constitutional deprivation. Accordingly, it appears that the ratification theory for *Monell*

liability is not premised on the ratification itself creating liability after the fact of injury;

but rather, it seems that ratification is merely a method of proving a preexisting

government "policy, custom, or practice" that proximately causes a plaintiff's

constitutional deprivation. As stated by the Ninth Circuit:

> The ratification doctrine, asserted as a basis for municipal liability, originated in *St. Louis v. Praprotnik*, 485 U.S. 112 (1988). There, a plurality of the Supreme Court stated that "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Id.* at 127. But the sentence from *Praprotnik* must be read in context. The Court held in *Praprotnik* that to establish municipal liability, a plaintiff must "prove [ ] the existence of an unconstitutional municipal policy." *Id.* at 128. A single decision by a municipal policymaker "may be sufficient to trigger section 1983 liability under *Monell*, even though the decision is not intended to govern future situations," *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986)), **but the plaintiff must show that the triggering decision was the product of a "conscious, affirmative choice" to ratify the conduct in question.**

*Haugen v. Brosseau*, 339 F.3d 857, 875 (9th Cir. 2003), *overruled on other grounds by*

543 U.S. 194 (2004) (emphasis added).

Such a formulation of the ratification theory is in keeping with the fundamental

principle that *Monell* liability attaches "when implementation of . . . official policies or

established customs *inflicts* the constitutional injury." *Monell*, 436 U.S. at 708 (emphasis added). To conclude otherwise would undermine the Supreme Court's instruction "that a municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'" *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Monell*, 436 U.S. at 694).

Reviewing the evidence in this case in the light most favorable to Plaintiff, the R&R provides two bases for its conclusion that Plaintiff's *Monell* claim should survive a summary judgment motion. First, the R&R finds as follows:

> There is evidence showing Chief Cheeseman approved Officer Roberts' use of force, ratifying the conduct. Thus, if the jury finds Officer Roberts' use of force violated Plaintiff's constitutional rights and does not consider the ratification claim, the Fircrest use of force policy would necessarily allow for the unconstitutional use of excessive force. As the evidence shows Chief Cheesman affirmed the use of force – and in light of the Court previously finding there is a question of fact regarding whether Officer Roberts' use of force violated Plaintiff's constitutional rights – the Court concludes the ratification claim must be presented to the jury.

Dkt. 79 at 11.

The Court declines to adopt the R&R on this basis. While this reasoning is appealing at first glance, it fails to account for the fact that there are genuine factual disputes surrounding the circumstances of the shooting. Such disputes mean only that a jury could reasonably find that Officer Roberts's use of force violated the Constitution if all the evidence is construed in the light most favorable to Plaintiff. However, when conducting its investigation, the review board was not required to interpret all of the evidence surrounding the shooting in the light most favorable to Plaintiff's case.

1       In deciding that Officer Roberts used lawful force and was acting within the

2  Fircrest Police Department's use of force policy, the review board and Chief Cheesman

3  relied upon the factual account provided by Officer Roberts. Under Officer Roberts's

4  description of the shooting, he reasonably believed that Plaintiff was an armed assault

5  suspect, fleeing from police, who entered an apartment potentially occupied by future

6  victims and then—when finally cornered—made furtive motions at a waist or torso level

7  while refusing repeated instructions to show his hands. Under this version of the relevant

8  events, Officer Roberts would unquestionably be entitled to use lethal force due to his

9  reasonable belief in an imminent threat of substantial harm or death. *See Cruz v. City of*

10  *Anaheim*, 765 F.3d 1076, 1078 (9th Cir. 2014) (After cornering an armed and fleeing

11  suspect, "[i]t would be unquestionably reasonable for police to shoot a suspect . . . if he

12  reaches for a gun in his waistband, or even if he reaches there for some other reason . . .

13  [g]iven [his] dangerous and erratic behavior up to that point . . . .").

14       *Monell* liability requires "something more" than "an investigative group

15  accept[ing] an officer's version over a victim's differing version" of the circumstances

16  surrounding a shooting. *Kanae*, 294 F. Supp. 2d at 1191. Accordingly, the Court declines

17  to adopt the R&R's conclusion that Plaintiff's *Monell* claim survives summary judgment

18  based solely on the fact that Chief Cheesman and the review board found that Officer

19  Roberts's conduct, as the review board believed it to have occurred, was within the

20  Fircrest Police Department's use of force policy.

21       Second, the R&R also evaluates the procedures employed in the internal

22  investigation and concludes that "there is some material evidence showing the internal

1  investigation was flawed." Dkt. 79 at 15. Specifically, the R&R cites the following facts:

2  (1) Officer Roberts's own unit performed the investigation and review; (2) the review

3  board and Chief Cheesman were provided with reports and witness reports that could be

4  construed to contradict Officer Roberts's version of the events; and (3) the review board

5  adopted Officer Roberts's version of the events in their entirety. *See* Dkt. 79 at 15.

6      The Court declines to adopt this recommendation for the R&R as well. Reviewing

7  the findings of the review board and the procedures employed during the internal

8  investigation, the Court cannot conclude that the review board or Chief Cheesman either

9  made "a conscious, affirmative decision to ratify the [unconstitutional] conduct in

10  question," *Brosseau*, 339 F.3d at 875, or conducted the internal investigation (or other

11  previous investigations) in a way that signaled to officers that they could "get away with

12  anything." *See Larez*, 946 F.2d at 647. In reaching its conclusion, the review board

13  considered numerous reports, some of which supported Officer Roberts's account and

14  some which created factual questions. *See* Dkt. 74-1 at 4. However, while there is a

15  genuine factual dispute regarding whether Plaintiff was already escaping out an open

16  door when he was shot, *see* Dkt. 56-14 at 43, there is no evidence that so compellingly

17  contradicts or refutes Officer Roberts's version of the events so to make the review

18  board's determination appear unreasonable.

19      In reaching its decision to believe Officer Roberts's description of the shooting,

20  the review board neither unreasonably relied on any particularly unbelievable evidence

21  nor disregarded any compelling evidence. *See Larez*, 946 F.2d at 647 (*Monell* liability

22  where an internal investigation expressly relied on a factual account from an officer who

1   was not present and the "investigation contained holes and inconsistencies that should

2   have been visible to any reasonable police administrator.") (internal quotations omitted).

3   Nor is there any evidence that the Fircrest Police Department has a history of ignoring

4   unfavorable evidence over credible allegations such that it is "almost impossible for a

5   police officer to suffer discipline as a result of a complaint lodged by a citizen." *Id.* In

6   fact, the evidence before the Court suggests it would be reasonable for a jury to conclude

7   that Plaintiff's efforts to use his hands and open the door with a handle at waist or mid-

8   torso level were the very furtive movements described by Officer Roberts. Under these

9   circumstances, even if a jury ultimately disagrees with Officer Roberts's version of the

10   events, the Court cannot conclude that there is any evidence to show that the review

11   board acted unreasonably in believing Officer Roberts's description of the shooting.

12        Based on this analysis of the applicable law and the evidence underlying the

13   review board's determination, the Court concludes that the decision of the review board

14   and Chief Cheesman did not constitute a ratification of conduct and its unconstitutional

15   basis as alleged by Plaintiff. Rather, the review board simply decided not to discipline

16   Officer Roberts when it appeared that he had shot a seemingly armed, fleeing, and

17   cornered suspect who made furtive movements while refusing repeated commands to

18   show his hands. Accordingly, the Court will grant Defendants' motion for summary

19   judgment on Plaintiff's *Monell* claims.

20                   **III.    ORDER**

21      The Court having considered the R&R, Plaintiff's objections, and the remaining

22   record, it is hereby **ORDERED** that Defendants' motion for summary judgment on

1   Plaintiff's *Monell* claims is **GRANTED**. The parties shall submit a joint status report

2   regarding proposed dates for trial on Plaintiff's remaining claims, as the range of dates

3   provided in their previous joint status report has already passed. The Court will

4   subsequently issue an order setting a trial date and deadline for the parties' trial briefs,

5   proposed findings of fact and conclusions of law, and the proposed pretrial order.

6          Dated this 22nd day of December, 2017.

7

8
                                                    _____
9                                                   BENJAMIN H. SETTLE
                                                    United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22